# ANDERSON FOUNDRY & MACHINE WORKS v. POTTS et al.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

## No. 750.

**1. PATENTS—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.**

While the use in a claim of a patent of the words "substantially as specified," or equivalent words, import into the claim so much of the specification as is necessary to describe in particular an element embraced in it, such words cannot be given effect to read into the claim an element described in the specification, and included in other claims, but not mentioned in such claim, for the purpose of giving identity to claims which in terms are intelligibly different.

**2. SAME—INFRINGEMENT—CLAY DISINTEGRATOR.**

The Potts patent, No. 322.393, for a clay disintegrator, claim 3, which covers broadly in a clay disintegrator "a cylinder arranged to revolve, and having scraping bars attached to its periphery, and an inclined plate * * * forming opposite sides of a trough for the reception of clay," if valid, is so limited by the prior art that it is not infringed by a machine in which a plain revolving cylinder is substituted for the inclined plate.

Appeal from the Circuit Court of the United States for the District of Indiana.

This appeal is from a decree adjudging the validity, and infringement by the appellant, of claim 3 of letters patent of the United States No. 322,393, issued on July 14, 1885, to C. and A. Potts for a clay disintegrator. The specification, in so far as it need be quoted, Fig. 4, which shows a vertical section, and the claims of the patent are as follows:

"Our invention relates to an improved machine for finely dividing and tempering clay. The object of our improvement is to disintegrate the clay by means of a revolving cylinder, which shall remove successive portions from a mass of clay which is automatically pressed against the cylinder, as hereinafter fully described. The accompanying drawings illustrate our invention:

Fig. 4.

"* * * The opposed sides of cylinder A and the upper and central portions of plate D form, together with sheet-metal end plates, s, s, which are secured to the frame, a trough, one side of which approaches and recedes from the other at intervals, and which has at the bottom a narrowing opening, t, of constant width. The operation of our machine is as follows: Plate D being swung back to the position shown in dotted lines Fig. 4, the moist, untempered clay is thrown into the trough above mentioned. Cylinder A revolving rapidly, successive portions are removed from the mass of clay, and car-

ried through the opening, t, by the scraping bars, c. At the same time the upper portion of the plate D moves slowly towards the cylinder, thus keeping the mass of clay in close contact with the cylinder as successive portions are removed. The force with which plate D is moved towards the cylinder is regulated by drawing the intermediate friction wheel, p, more or less closely in contact with the wheels n and o, by means of the screw nut, u, thus lengthening or shortening the frame, r, the purpose being to cause enough friction between the wheels to move plate D sufficiently to keep the clay in contact with the cylinder, and also to slip when necessary to prevent undue pressure against the cylinder. The finely divided clay, after passing through the opening, t, falls upon the lower curved portion of plate D, and from thence to the incline, w. If the clay is quite moist, some of it will adhere to the curved portion of the plate, and will again be brought in contact with the cylinder as the upper portion of the plate recedes to receive a new supply of clay, and will thus be removed. It is desirable at times, in disintegrating dry or nearly dry clay, or other like substance, to feed the mass to the cylinder without great pressure. For this purpose we disconnect the yoke, k, and arm, l, and throw the wheel p out of engagement with the wheel o. By turning wheel o by hand, plate D may now be set at a suitable angle, as that shown in dotted lines, Fig. 4, or any intermediate angle between that and the position shown in full lines, so that the mass is fed to the cylinder by force of gravitation alone.

"We claim as our invention: (1) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and a swinging plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, and means for swinging said plate alternately towards and from said cylinder; all combined substantially as specified. (2) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and having scraping bars attached to its periphery, and a swinging plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, and means for swinging said plate alternately towards and from said cylinder; all combined substantially as specified. (3) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and having scraping bars attached to its periphery, and an inc. .ed plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay; all combined substantially as specified. (4) In a clay disintegrator, the combination, with the revolving cylinder of the swinging plate, consisting of a central cylindrical portion, an upper straight portion, and a lower curved portion; all substantially as specified. (5) The combination, with the supporting frame, the revolving cylinder, and the swinging plate, of the shaft, j, eccentric, i, yoke, k, arm, l, and wheels, n, o, and p, substantially as and for the purpose specified. (6) In a clay disintegrator, the combination, with cylinder A, having a series of longitudinal grooves, of the scraping bars, c, adjustably secured in said grooves, for the purpose specified."

The sixth claim of the patent has been in litigation in the Sixth circuit, and has been declared valid by the Supreme Court and by the United States circuit court of appeals for that circuit, each reversing a decree of the circuit court. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Id. (C. C.) 44 Fed. 680; In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994; C. & A. Potts & Co. v. Creager, 71 Fed. 574; Potts & Co. v. Creager, 38 C. C. A. 47, 97 Fed. 78; Id. (C. C.) 77 Fed. 454. In the case that was before the Supreme Court the following patents and publications were in evidence as anticipatory: No. 33,119, to J. R. Whittemore; 49,714, to R. Butterworth; 52,472, to T. J. Wells; 53,598, to C. T. Frost; 57,280, to John Blackie; 61,932, to Warren Gale; 92,997, to G. H. Peabody; 110,927, to I. and W. D. Mayfield; 116,039, to M. R. Fletcher; 125,159, to A. Alexander; 160,618, to D. Rudy; 207,717, to J. Creager; 225,976, to G. H. Ennis; 231,512, to A. Voelk; 242,387, to J. W. Smith; 291,654, to G. Van Name; 297,764, to J. M. Case; 320,905, to Alsip & Drake; English patent No. 1,671, to Cooke, Bombroffe, and Baker, dated May 11, 1874; two extracts from Knight's Mechanical Dictionary, known as "No. 1" and "No. 2;" and a certain old device known as the "Creager Wood-Polishing Machine." In this case the following were pleaded and put in evidence as anticipatory: No. 17,505, to Hersey and Van Ripper;

66,488, to Isaac Gregg; 116,039, to M. B. Fletcher; 159,334, to A. Kumpf; 196,082, to P. W. Gates; 203,364, to D. C. Newell; 203,794, to S. Stutz; 211,-316, to L. J. Bennett; 214,384, to W. L. Gregg; 246,992, to J. C. Anderson; 271,589, to J. C. Anderson; 289,025, to J. W. Penfield; 293 001, to L. D. Ferguson; English patent No. 1,671, of 1874, to Cooke, Bombroffe, and Baker. And the following, not pleaded, were put in evidence: No. 66,536, to W. H. Thomas; 139,804, to Mills & Mills; 202,940, to P. W. Gates; 274,574, to S. Dodson; 286,520, to W. Andrus; 284,613, to H. Cockell; 251,660, to W. W. Wallace; 312,667, to J. S. Smith; 384,278, to George Potts. On the strength of testimony which was not before the Supreme Court, it is now insisted that the Newell patent, No. 203,364, and the Cooke English patent anticipated the Potts machine as a disintegrator of clay.

The following cuts represent a machine manufactured by the appellants:

Fig. 1.—Perspective

Fig. 2.—Central Section.

Fig. 3.—Elevation of single Cylinder; Sections

Fig 4.—Side Elevation of Cutting Cylinder

And the following is a drawing of a spiral ribbed roll manufactured by the appellants, which they now use instead of the form of roll illustrated above:

The following is a copy of the drawing of English letters patent No. 1,671, issued to Cooke, Bombroffe, and Baker:

"This invention consists," says the patent, "in adapting to the ordinary plain or cylindrical rollers, employed in pulverizing, grinding, or reducing clay or other substance, any suitable number of iron, steel, or other metal ribs fixed on the rollers so as to take a spiral or Archimedean course, and secured at each end with metal rings, screw bolts, or their equivalents, so that the scraper usually employed cleans all at the same time; or the rollers and ribs may be made in one casting, and a number of steel or iron studs or spikes are employed, fixed at or cast with the rollers, and projecting from the outer surface thereof between the ribs; the object of such arrangement being to more completely disintegrate, pulverize, and reduce the material, and thus produce a fine clay, with the advantage of using up waste, and with an economy in steam, horse, or manual power. One or more of these rollers are employed in a mill, and, although specially applicable to pulverizing clay, they may be advantageously employed for the reduction of other substances. * * * Although the drawing represents the ribs as connected by metal rings to the roller, we do not confine ourselves to this method, as has been previously stated. The ribs may be connected to the roller by screw bolts or other efficient means, or they may be cast in one piece with the roller. Having thus described our invention, what we claim is the combination with the ordinary cylindrical or plain rollers of the spiral ribs, a, fixed to the roller by the rings, b, or by other suitable means, and in conjunction with the metal studs or spikes arranged between each rib in the manner and for the purposes substantially as hereinbefore described."

E. E. Wood and Wm. R. Wood, for appellant.

Chester Bradford, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The decision of the supreme court in Potts & Co. v. Creager is not technically determinative of this case, because the parties are different, and because the claims in issue now and then are not the same. Only the sixth claim of the patent was adjudged valid in that case. The third, only, is now in question. So far as found applicable, the opinion of the Supreme Court will, of course, be followed. The claims of the patent have all been set out in the statement of the case because of their bearing upon the construction of the one in suit. Each, as will be seen, differs in some important particular from each of the

others. In the first the special feature of the combination is the swinging plate. No mention is made of the scraping bars, and the revolving cylinder therefore may be plain or smooth. The second embraces all that is shown in the specification and drawings, except that nothing is said of the "central cylindrical portion" of the swinging plate, and nothing of the scraping bars being longitudinal or adjustable. The third, now in suit, includes a revolving cylinder, having scraping bars and an inclined plate, both mounted in a frame, and forming opposite sides of a trough for the reception of clay; but the plate is not characterized as swinging; no mention is made of means for swinging it, or of its having a central cylindrical portion; and nothing is said of the scraping bars being longitudinal or adjustable. In the fourth, as in the first, the cylinder may be without scraping bars, but the plate, in conformity to the specification, must be swinging, and must have a central cylindrical portion, an upper straight portion, and a lower curved portion. In the fifth, again, the revolving cylinder may be without bars, but the swinging plate and the means of swinging are included. In the sixth the elements of the combination are the cylinder having a series of longitudinal grooves and the scraping bars adjustably secured in the grooves. In effect, the last claim is simply for the cylinder with scraping bars adjustably secured in longitudinal grooves when found "in a clay disintegrator." What the other elements or features of the disintegrator should be is manifestly immaterial. The supreme court said of it:

"The only feature of the first patent material to be considered is the cylinder described in the sixth claim as a cylinder having a series of longitudinal grooves, of the scraping bars, c, adjustably secured in said grooves, for the purpose specified."

That could not have been said if any other than the sixth claim of the patent had been in issue.

In Westinghouse v. Brake Co., 170 U. S. 537, 558, 18 Sup. Ct. 707, 717, 42 L. Ed. 1136, 1144, referring to the words "substantially as set forth," the supreme court said, "These words have been uniformly held by us to import into the claim the particulars of the specification;" but this, as we conceive, does not justify the contention of the counsel for the appellee that, the shredding cylinder being claimed as a part of a clay disintegrator, "the specification and drawing should be referred to to determine what elements were required to constitute such a machine." The very fact that the other elements mentioned in the specification, while expressly embraced in the other claims, were not mentioned in the sixth claim, demonstrates an intention to cover by that claim any and all forms of disintegrators in the construction of which that cylinder should be used. Two rollers in combination, it was well known, had been used before for the purpose of grinding clay, as shown in the patent of 1872 to Alexander. In order, therefore, to protect whatever of invention there was in the cylinder with adjustable longitudinal scraping bars, a claim which should cover it in a disintegrator of any construction, with or without a plate or swinging plate, was clearly requisite; and to import a plate into the sixth claim by inference from the specification and drawings would be to deprive the claim, upon the face of the patent,

of the scope of which the Supreme Court declared it to be possessed. The true rule seems to be, as stated in McCarty v. Railroad Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 242, 40 L. Ed. 358, 361, that, while reference may be made to the specification and drawings of a patent "with a view of showing the connection in which a device is used, and proving that it is an operative device," it is not permissible "to read into a claim an element which is not present for the purpose of making out a case of novelty or infringement." This is not inconsistent with the expression quoted from the Westinghouse Case, which means only that, when it is necessary to look beyond a claim for the "particulars" of an element embraced in it, which, for example, may be designated only by a letter of the alphabet, the description given in the specification, so far as necessary to support the claim, may be read into it. Clearly, however, it is not allowable in that way to give identity to claims which in terms are intelligibly different.

Claim three in terms includes an "inclined plate," but not a swinging plate, nor the means for swinging, nor the central cylindrical portion, and only in the absence of these features, one or all, is it distinguishable from the first, second, fourth, and fifth claims respectively. It is, therefore, simply a claim for the combination in a clay disintegrator (necessarily having a supporting frame) of a revolving cylinder having scraping bars attached, and an inclined plate, so mounted as to form opposite sides of a trough for the reception of clay. In view of the prior art it is difficult to perceive invention in this construction. If it be there, it is because of the scraping bars upon the cylinder. But these, it is to be observed, are not required to be of any particular form, and, unless the description of the specification is to be read into the claim, need not be adjustable, and, instead of being located in longitudinal grooves, may be spiral, as in the English patent to Cooke and others. If they are to be according to the specification, the novelty and patentability of the combination would be established by the opinion of the Supreme Court, if the evidence before us were the same in substance as that in the record before that court; but upon the claim as it reads that opinion seems to have little or no bearing. It is insisted, too, that in important respects the evidence now adduced is different. Particular stress is laid upon the patent to Newell, No. 203,364, the English patent, and the proof adduced to show that they are operative and successful machines, doing what is claimed for the Potts device. The Newell patent was not before the Supreme Court, and the proof here seems to show that, as claimed for it, it delivers the clay, not in compact sheets, but in a "disintegrated pulpy condition, which readily takes water, and renders further tempering an easy matter." The specification says of the device that, "instead of making the teeth in the periphery of a series of interlocking ridges or angular rings on the cylindrical surfaces of the rollers, the present invention consists in making shallow teeth in angular sides of the rings, of sufficient depth to effect a hold on the material to be ground, without allowing any of it to pass unground." The structure of the Newell device is so far different from that of the Potts patent that it could hardly be deemed to be an anticipation, but it does seem to establish that the

Potts machine was not the first "to disintegrate and pulverize," as distinguished from crushing, the clay.

The English patent and the conflicting testimony of experts concerning it were in the case of Potts & Co. v. Creager, and presumably were considered, but no direct mention of the patent is to be found in the opinion. The testimony in this case shows it to be a practical device, and that the ribbed roll, which the appellant commenced in August, 1899, to manufacture and use instead of the cylinder with longitudinal bars, is preferable, because it runs without the jar caused by the impact of the straight bars, and delivers the clay in as good or better condition; the centrifugal force produced by the rapid revolution of the roll preventing the spaces between the spiral ribs from being filled up so as to make, as the experts for the appellee declared probable or inevitable, an evenly surfaced cylinder. If that testimony be accepted as true,—and it does not seem to be controverted,—it is difficult to see how patentable novelty can be conceded to the Potts cylinder and bars. The difference is only in the substitution of longitudinal and adjustable for spiral scraping bars, and in the third claim that difference seems to be eliminated. To say the least, the ribbed roll made in conformity to the English patent cannot be regarded as an infringing equivalent of the revolving cylinder with adjustable scraping bars fixed in longitudinal grooves upon its periphery.

In view of the prior art, and, indeed, upon the face of the patent, it seems entirely probable that the swinging plate was supposed to be the principal feature of the invention, and that the adjustable bars on the cylinder must have been adopted only as substitutes for the bars, spiral or straight, and for the spikes, knives, grooves, ridges, and teeth already in well-known use in machines designed for the treatment of clay. While the second claim embraces approximately all that is in the specification, and the first, fourth, and fifth each omit one or more features either of the plate or cylinder, the third and sixth are each made as broad as possible by the introduction of the fewest possible elements consistent with a differentiation of one from the other; the sixth being confined to a cylinder (clearly intended to revolve) equipped with adjustable longitudinal bars, and the third to a revolving cylinder with scraping bars on its periphery, and an inclined plate, of the simplest form, so mounted with the cylinder as to form between them a trough for the reception of clay. Whether the third claim is valid need not be decided. If so, it must be restricted to narrow lines, which make it impossible to say that the substitution of a plain revolving cylinder for the inclined plate is an infringement. It is true that two parallel and confronting cylinders necessarily have between them a space somewhat resembling a trough; but there was nothing new in that, and to so place cylinders for the purpose of making a trough between them could not possibly have been made the subject of a patent monopoly. Besides, a trough for the reception of clay intended to be passed between cylinders was never attempted to be formed in that way, and that it could be done with practical success it is impossible to believe. There must be, and in the Potts machine, when made with two cylinders, there always has been, a hopper, from which the clay descends to the line, or nearly to the

line, of passage between the cylinders. There was propriety in saying that the cylinder and inclined plate of the third claim formed the opposite sides of a trough, but to call the space between opposing cylinders a trough is fanciful and impractical. To put into a disintegrator an inclined plate, and especially a swinging plate, was an advance—at least an attempt at advance—upon the prior art, but to change the swinging plate to an inclined plate, and then to reject that, and put in its place a revolving cylinder, was simply a return pro tanto to the old art. If, as contended, the inclined plate of the claim is to be regarded as the swinging plate of the specification having a cylindrical central portion, it becomes only the more evident that, instead of appropriating the invention, the appellant, by using two opposing cylinders, simply returned to the prior art. The cylinder, substituted for the plate, does not constitute one side of a trough for the reception of clay; and, in so far as it performs the office of the cylindrical central portion of the plate, besides doing it better, it does it by a different method.

The decree below is reversed, with instruction to dismiss the bill.