SHEFFIELD CAR CO. v. D'ARCY.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

No. 2,155.

1. PATENTS (§ 328*)—INVENTION—SPRING CUSHION STRUCTURE.

The D'Arcy patent, No. 726,817, for a spring cushion structure, claim 3, which covers a combination in such a structure of "an upright helically-coiled spring and a strip of sheet metal with inturned opposite edges folded onto and embracing the opposite sides of the bottom coil of said spring, whereby said spring is supported and retained in position," fairly construing such language, refers broadly to the function of the metal strip in such combination in supporting and retaining the spring in an upright position by folding over the inturned edges to embrace the bot-tom coil of the spring, without including as a limiting element of the combination the separate function of the strip as a cross-piece in the seat or cushion frame, and, as so broadly construed, the claim was fully anticipated by the Crandall patent, No. 1,412, for a bed spring, which shows a series of sheet metal plates attached to a wooden slat, each re-taining and supporting a single spring in the same manner as the strip of the D'Arcy patent. If the claim be construed as including the func-tion of the metal strip as a cross-piece, still no patentable invention was involved in uniting the plates of the Crandall device into a single metallic strip, and giving it the functions of both the plates and a metallic cross-piece well known in the art.

2. PATENTS (§ 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.

A combination of old elements to be patentable must produce a new force, effect, or result as the product of the combined forces as distin-guished from a mere aggregation of the results of the old elements, each working out its separate effect.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 26*)—INVENTION—COMBINATION.

Although a device formerly made in two pieces is made in one piece if the elements operate in no different way, and have no different relation to each other when in a self-contained form than when one element is detached, the combination is not patentable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27-30; Dec. Dig. § 26.*]

4. PATENTS (§ 324*)—REVERSAL—DISPOSITION OF CAUSE.

On a broad appeal taken under Act March 3, 1891, c. 517, § 7, 26 Stat. 828 (U. S. Comp. St. 1901, p. 550), from an interlocutory decree of a Circuit Court granting an injunction, and ordering an accounting in a patent case, the Circuit Court of Appeals may, in order to save both parties from the expense of further litigation, not merely reverse so much of the decree as awarded an injunction, but may also consider and decide the case on the merits, and direct a final decree dismissing the bill.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600-606; Dec. Dig. § 324.*

Review of interlocutory decree granting or refusing injunction in patent case in Circuit Court of Appeals see notes to Gill & Fisher v. Browne, 3 C. C. A. 572; Southern Pac. Co. v. Earl, 27 C. C. A. 189; New York, N. H. & H. R. Co. v. Sayles, 32 C. C. A. 484.]

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Suit in equity by Frank P. D'Arcy against the Sheffield Car Company. Decree for complainant, and defendant appeals. Reversed.

Francis C. Lowthorp, for appellant.

F. L. Chappell (Chappell & Earl, on the brief), for appellee.

Before WARRINGTON, Circuit Judge, and McCALL and SANFORD, District Judges.

SANFORD, District Judge. This suit was brought by the appellee, Frank P. D'Arcy, by bill in equity, against the appellant, the Sheffield Car Company, for the alleged infringement of letters patent No. 726,-817, for improvements in springs, issued to said D'Arcy April 28, 1903, on an application originally filed October 2, 1902. The defenses were that D'Arcy was not the original inventor of the patented structure, that the patent was void for anticipation and want of patentable invention, and noninfringement. After a hearing on pleadings and proof, a decree was entered adjudging and decreeing that D'Arcy's patent was good and valid, and that he was its original inventor, that the defendant had infringed the third claim of this patent, but had not infringed its other claims, and dismissing the bill as to all claims of the patent except the third, but as to that claim ordering a reference for the ascertainment of profits and damages and perpetually enjoining further infringement. From the provisions of this interlocutory decree adjudging the infringement of the third claim of this patent and awarding an injunction and ordering an accounting, the defendant prayed an appeal to this court; and a broad appeal from the decree was thereupon allowed it by the Circuit Court.

The invention claimed by D'Arcy relates to improvements in spring cushion structures for seats and the like. The structure disclosed in

the specification and drawing of his patent consists of a series of cross-strips of flat sheet metal, fixed transversely in a substantially rectangular seat frame, each cross-strip having mounted upon it a row of spiral springs in an upright position, which are held to the cross-strip and supported and retained in position by turning inward the opposite edges of the cross-strip and folding them back so as to embrace the opposite sides of the bottom coil of each of the springs.

Fig. 1 in the drawings, which is a plan view of the spring structure as applied to a cushion for carriage seats, showing the cross-strips *B*—which are also designated in the specification "supporting-strips"—and the upright spiral springs *C* mounted thereon, and Fig. 3, which is a detailed perspective view of a cross-strip *B*, showing the manner of securing a spring *C* thereto, are here reproduced.

The specification refers to this cross-strip *B* and the method of supporting and retaining the springs thereby as follows:

"A strip *B* of sheet metal is provided for each row of springs *C*. * * * The edges of this strip are folded back onto the same and parallel therewith, forming channels or grooves at each side. The springs *C* * * * are secured within this channel-shaped groove, the coil *C'* of the spring being conformed thereto, so that it supports the spring in an upright position above the strip, the spring being retained by being grasped by the folded-back edges of the cross-strip. The springs are very securely supported in position, and, owing to the very firm grasp of the cross-strips on the bottom coils, they are efficiently supported independently of each other without any danger of tipping or becoming displaced, and owing to the fact that the bottom coil is conformed there is no chance for twisting or turning the springs, which might possibly tend to loosen them and wear the covering. * * * I perferably form the sheet-metal cross-strips *B* in the form of channel-irons or roll the edges over as in forming seams. The * * * bottom coil (of the springs *C*) being conformed and the edges of the strips *B* rolled or stamped down upon the same * * * holds the springs so that they are always supported in an upright position and twisting and turning or other movement in the cushion is prevented. * * *"

Claim 3 of D'Arcy's patent, which is the claim directly involved under this appeal, is as follows:

"3. In a spring-cushion structure, the combination of an upright helically-coiled spring; a strip of sheet metal with inturned opposite edges folded onto and embracing the opposite sides of the bottom coil of said spring, whereby said spring is supported and retained in position."

The device manufactured and sold by the defendant, which the court below held to be an infringement of claim 3 of D'Arcy's patent, is made under letters patent No. 711,611, issued to Emil A. Hoefer, as inventor, and others, October 14, 1902, on an application filed July 18, 1902, for improvements in spring seats. The structure disclosed by the Hoefer patent consists likewise of a series of sheet metal cross-strips fixed transversely in a seat frame, on which spiral springs are likewise mounted, these cross-strips, however, being of angular form, that is, raised in the center so as to present in cross-section the form of an inverted U or V, and having their edges turned upward, towards the apex, so as to form trough-like stirrups, the lower coils of the springs being bent upward in the middle so that they may be seated astride the apex of the cross-pieces and inserted in and secured by the trough-like stirrups formed by the upturned edges of the cross-pieces, which embrace and secure them substantially as in the D'Arcy device. Fig. 4 of the drawings of this patent, which is a sectional detail of a cross-piece B, showing its angular form, and the lower coil of a spring C inserted therein, is here reproduced:

It is clear, however, that the difference between the flat form of the cross-strip in the D'Arcy patent and the angular form of the cross-strip in the Hoefer patent does not involve patentable invention. Murray v. D'Arcy (6th Cir.) 161 Fed. 352, 354, 88 C. C. A. 364. And it is not disputed by the defendant that if D'Arcy was in fact the original inventor of the device disclosed in these two patents, and if claim 3 of the D'Arcy patent be not otherwise void, it is infringed by the device manufactured and sold by the defendant under the Hoefer patent.

It is earnestly insisted, however, by the defendant that as the Hoefer patent antedates the D'Arcy patent, both in the date of application and in the date of issue, the burden of proof rested upon D'Arcy, in order to avoid the effect of the Hoefer patent as a complete anticipation, to establish the priority of his invention beyond a reasonable doubt by analogy to the rule laid down in the Barbed Wire Patent, 143 U. S.

275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, and Columbus Chain Co. v. Standard Chain Co. (6th Cir.) 148 Fed. 622, 78 C. C. A. 394; and that under the doctrine of Christie v. Seybold (6th Cir.) 55 Fed. 69, 5 C. C. A. 33, and Automatic Weighing Mach. Co. v. Pneumatic Scale Corp. (1st Cir.) 166 Fed. 288, 92 C. C. A. 206, he has failed to sustain the burden resting upon him to show both that he had conceived the structure of his patent prior to the date of Hoefer's conception of his patented structure, and that he had ·thereafter exercised reasonable diligence in the reduction of his invention to practice. The court below, upon consideration of the entire evidence, was of opinion that D'Arcy had sustained the burden of proof resting upon him in these respects. In the view which we take of this case, however, we do not deem it necessary to determine the questions of law and fact which arise under· this contention of the defendant, for the reason that we are of the opinion that independently of the question of priority of invention as between D'Arcy and Hoefer, claim 3 of the D'Arcy patent must, without regard to the Hoefer patent, be held, in view of the prior state of the art, to be void for anticipation and want of patentable invention.

[1] In the first place, we are of the opinion that the language of claim 3 of D'Arcy's patent, which sets forth his claim to the combination in a spring structure, of "an upright helically-coiled spring" and "a strip of sheet metal with inturned opposite edges folded onto and embracing the opposite sides and bottom coil of said spring, whereby said spring is supported and retained in position," when fairly and reasonably construed, refers broadly to the function of a metal strip, in such combination of a metal strip and spring, in supporting and retaining the spring in an upright position by folding over the inturned edges of the strip so as to embrace the bottom coil of the spring, without including, as a limiting element of the combination claimed, the separate function of the metal strip as a cross-piece, holding a row of spiral springs thus supported apart, and retaining them in their proper position in a seat frame. This appears from the use of both the words "strip" and "spring" in the singular number, from the absence of any reference to the metal strip as a cross-piece, and from the omission of the seat frame as an element of the combination for which the claim is made. And, while there might be on its face some ambiguity in the use of the phrase "whereby said spring is * * * retained in position," we think this is removed by reference to the statement in the specification, above quoted, that the coil of the spring is secured within the channel-shaped groove of the metal strip and conformed thereto, "so that it supports the spring in an upright position above the strip, the spring being retained by being grasped by the folded-back edges of the cross-strip;" this phrase clearly indicating that the word "retained" is used in the sense merely that the spring is "retained" in position on the metal strip by being grasped by its folded-back edges. This construction of the third claim of the patent is made the more evident, when the language of this claim is contrasted with that of the first claim of the D'Arcy patent, which, although not itself directly involved under this appeal, may, under the general rule that a patent, as any other written instrument, is to be construed as a whole and due

effect given to all its parts, be looked to for the purpose of aiding in the proper construction of the third claim. See National Cash Register Co. v. Register Co. (3d Cir.) 53 Fed. 367, 370, 3 C. C. A. 559; Anderson Foundry v. Potts (7th Cir.) 108 Fed. 379, 383, 47 C. C. A. 409, and Lamson Consolidated Co. v. Hillman (7th Cir.) 123 Fed. 416, 419, 59 C. C. A. 510. The first claim of the D'Arcy patent is for the combination in a spring structure "of a frame *A;* conical springs with coils *C*" at the bottom confined to the cross-strips; sheet-metal cross-strips *B* with inturned edges folded onto the bottom coils of said springs to clamp the same, co-acting for the purpose specified." When the language of claim 3 is contrasted with that of claim 1, in which is thus set forth the function of the strips *B* as cross-strips coacting with the springs and the frame as elements of the combination claimed, the absence in claim 3 of any reference to the frame as an element of the combination claimed, of any reference to more than one spring supported and retained by the metal strip, of any reference to the metal strip as a "cross-piece," and of any reference to the coaction between the frame, metal strip, and the frame in the combination claimed, we are constrained to conclude that claim 3 of the patent was, by the language used, intended to cover broadly the function of the metal strip as a direct support and retention of the upright spring, and without including, as a part of the combination claimed, the added function of the metal strip as a "cross-strip" for the purpose of retaining the several springs in their proper position in the frame.

And thus construed, we are of the opinion that claim 3 of the D'Arcy patent was clearly anticipated by letters patent No. 114,112, issued April 25, 1871, to Delos V. Crandall, on improvements in bed springs, relating to the means for attaching helical springs to bed springs, rails, etc. This patent disclosed a method of securing coiled bed springs to a slat or rail by means of a metal plate, having its ends bent over the two opposite sides of the spring, and itself secured to the slat by means of screws or rivets. Fig. 1 of the drawing giving a top plan view of Crandall's improved bed spring, and showing the spring *C,* the metal plate *B* and the slat *E*, is here reproduced:

Fig. 1.

Obviously the inturned end of the metal plate *B* in Crandall's patent, embracing the bottom coil of the supported spring, completely

anticipates the use of the inturned edge of the metal strip *B* in the D'Arcy patent, as a means of securing the lower coil of the spring and retaining it in an upright position.   And, as the fact that in the Crandall patent the metal plate was itself screwed or riveted to a slat or cross-piece does not prevent the Crandall device from being a complete anticipation of the function of D'Arcy's metal strip under claim 3 of his patent, we are therefore of opinion that this claim was in its essential features completely anticipated by the Crandall device.

But in the second place, even if claim 3 of the D'Arcy patent should be construed so as to include the function of the metal strip as a cross-piece retaining a series of springs in the frame, we are nevertheless of the opinion that in view of the prior state of the art, as disclosed in other patents, the improvement thus made by combining integrally in one metal strip the function of Crandall's metal plate securing the individual springs, and the function of a metal cross-strip retaining a series of springs in the frame, did not involve patentable invention.   Not only was the use of a cross-piece connecting a series of springs disclosed in the Crandall patent itself, in which it appeared in the form of a wooden slat, but the specific use in spring structures of metal bars or cross-pieces supporting and retaining a series of springs in the frame of a spring structure, was itself old in the art, being disclosed among other instances, in the L. C. Boyington patent, No. 181,816, issued September 5, 1875, on spring bed bottoms, the Charles C. Bailey patent, No. 239,694, issued April 5, 1881, on spring cushion supports for carriage seat backs, and the James H. Cloyes patent, No. 604,368, issued May 24, 1898, on spring seats.

It is evident, therefore, that the alleged invention consisted essentially in merely enlarging and adapting the metal plate of Crandall's device, so as to combine integrally in one device a metallic strip having in itself the functions of Crandall's metal plate in securing the several springs by enfolding their bottom coils within its inturned edges, and the ordinary and well-known function of a metal bar or cross-piece retaining a series of springs in place in the frame of a spring structure.   Such enlargement and adoption of the metal plate of the Crandall patent so as to give it the added function of the ordinary cross-piece, that had not only appeared in the form of a wooden slat in the Crandall device, but was also well known in the prior art in a metallic form, did not, however, in our opinion, call for the exercise of inventive faculties, but involved merely the mechanical skill of one versed in the art.

In Standard Caster & Wheel Co. v. Socket Co., 113 Fed. 162, 166, 51 C. C. A. 109, in which it was held by this court that the substitution for a separate riveted spring in a caster socket of a spring made integrally with the socket did not amount to invention, Judge (now Mr. Justice) Lurton, delivering the opinion of the court, after reviewing the cases of Krementz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, Howard v. Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039, and Manufacturing Co. v. Holtzer (1st Cir.) 67 Fed. 907, 15 C. C. A. 63, said:

"The conclusion from all the cases must be that the mere making in one piece of a device formerly made in two parts mechanically attached is not

invention. The exception to the general rule must depend upon special facts indicating the presence of the inventive faculty in a degree greater than the mere mechanical knowledge exhibited by so simple an improvement."

In Thomas v. Railroad Co., 149 Fed. 753, 79 C. C. A. 89, it was held by this court that a device consisting in its essential features of a U-bolt applied to a stake on the sides of a car, which instead of being applied to the end of the stake, as usual, was applied higher up, and which, instead of extending directly inwards, so as to be secured to the side, was lengthened and extended inward and downward, so as to be secured to the bottom part, and to serve also as a stay rod, was void on its face for lack of patentable novelty, both the U-bolt and stay rod separately being well-known mechanical devices in common use.

And in the recent case of Edward Hilker Mop Co. v. U. S. Mop Co., 191 Fed. 613, it was held by this court that having adopted a metallic handle extension in place of the lower end of a wooden mop handle, to adopt in the same connection the collar of the old wooden handled mop, carrying the wringer mechanism, as the collar and ferrule of the handle and metal extensions carrying the same wringer mechanism, and thus performing the same function as the old collar and in the same way, but with only the added function of holding the handle and extensions in connection and alignment, was the natural and obvious thing to do, and did not, under the circumstances, involve invention, but merely mechanical skill.

[2] It is, furthermore, clear that a combination of old elements, to be patentable, must produce a new force, effect, or result as the product of the combined forces, as distinguished from a mere aggregation of the results of the old elements, each working out its separate effect, and that a combination consisting merely of old parts and of old results, without the addition of any new and distinct function, is not patentable. Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719; Goodyear Rubber Co. v. Rubber Wheel Co. (6th Cir.) 116 Fed. 363, 369, 53 C. C. A. 583; National Cash Register Co. v. Register Co. (3d Cir.) supra, 53 Fed. at page 371, 3 C. C. A. at page 559. This doctrine applies, not merely when the old elements are separately used in the combination, but also when they are integrally combined in one device involving mere mechanical knowledge and producing no new result differing from the aggregate result of the former separate elements.

[3] Although a device formerly made in two pieces is made in one piece, if "the elements operate in no different way, and have no different relation to each other when in a self-contained form than when one element is detached, such combination is not invention." Gould v. Cincinnati Shaper Co., 194 Fed. 680, decided by this court January 3, 1912; and cases cited.

In the light of these decisions we are constrained to hold that, even if claim 3 of the D'Arcy patent be construed as referring to the functions of the metal strip as a cross-piece, as it, in effect, merely extended and enlarged the metal plate of the Crandall device, so as to combine integrally in one device the function of that metal plate as a means of securing the springs attached thereto, and the function of a metallic cross-piece, old in the art, as a means of retaining a series of springs

in their place in the frame of a spring structure, giving no new result differing from that obtained by a separate metallic cross-piece with the Crandall metal plates riveted thereon, it involved merely mechanical skill, and not invention, and is accordingly void.

[4] And being of opinion for the foregoing reasons that claim 3 of the D'Arcy patent is void both on account of anticipation and for want of patentable invention, without considering in detail the numerous assignments of error filed by the appellant, in which the grounds of error relied on are repeated in many variant forms differing only slightly in phraseology, or determining other questions raised in the briefs and arguments, which in the view we take of the case are not material to the determination of the ultimate question involved under this appeal, we necessarily conclude that the court below was in error in awarding the injunction under the decree from which the defendant has appealed.

However, on a broad appeal taken under section 7 of the judiciary act of March 3, 1891 (chapter 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]), from an interlocutory decree of a Circuit Court granting an injunction and ordering an accounting in a patent case, this court, as was held in Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, may, in order to save both parties from the expense of further litigation, not merely reverse so much of the decree below as awarded an injunction; but may also consider and decide the case on its merits and direct a final decree dismissing the bill; and, as the grounds of this opinion are conclusive of all the questions that are relevant under the pleadings and proof as to the validity and infringement of claim 3 of the D'Arcy patent, we conclude that we should, in the present case, not merely reverse so much of the decree below as awarded the injunction, as was done on an appeal from a preliminary injunction in American Carriage Co. v. Wyeth (6th Cir.) 139 Fed. 389, 392, 71 C. C. A. 485, or reverse the decree appealed from and remand the cause for further proceedings consistent with the opinion, as was done in Buser v. Machine Co. (6th Cir.) 151 Fed. 478, 496, 81 C. C. A. 16, but should also direct the dismissal of all that part of complainant's bill relating to claim 3 of the complainant's patent, as was done in Western Electric Co. v. Electric Co. (6th Cir.) 108 Fed. 953, 957, 48 C. C. A. 159.

So much of the decree of the Circuit Court appealed from as relates to claim 3 of the D'Arcy patent will accordingly be reversed, with costs, and the cause will be remanded to that court, with directions to dismiss so much of the complainant's bill as relates to said claim 3, with costs.