## PEERLESS WIRE FENCE CO. v. JACKSON FENCE CO.

(District Court, E. D. Michigan. January 25, 1915.)

1. Patents ⊚⟝328—Validity and Infringement—Staple Forming and Discharging Mechanism.

The Hoxie patent, No. 879,965, for a staple forming and discharging mechanism for use in the manufacture of "stiff-stay" woven wire fence was not anticipated, and discloses patentable invention; also construed as limited by the prior art, and *held* infringed.

2. Patents ⊚⟝165—Construction—Broad and Narrow Claims.

Where a patent contains both a broad and narrow claim, and suit is brought on the broad claim, the court cannot construe into it a limitation not therein expressed, but which is expressed in the narrower claim, and by which alone one is distinguished from the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. ⊚⟝165.]

In Equity. Suit by the Peerless Wire Fence Company against the Jackson Fence Company. On final hearing. Decree for complainant.

Wilber Owen, of Toledo, Ohio, for plaintiff.

Charles C. Linthicum, of New York City, and Luther V. Moulton, of Grand Rapids, Mich., for defendant.

TUTTLE, District Judge. This suit is on Hoxie patent, No. 879,965, issued February 25, 1908, for staple forming and discharging mechanism. Plaintiff charges infringement of claims 2, 3, 7, 9, and 12.

[1] Plaintiff has been engaged in the manufacture of "stiff-stay" woven wire fence at Adrian, Mich., for the past 18 years, and prior to 1908 was known as the Lamb Wire Fence Company. Defendant has been engaged at Jackson, Mich., in the manufacture of the same type of fence for about 10 years. The fence manufactured by the parties consists of a number of continuous line or strand wires, to which cross wires extending the full width or height of the fence are secured at regular intervals by means of staples, which are driven around the intersections of the strand and cross wires to securely lock them together, thus giving to this type of fence the name "stiff-stay," as distinguished from "wrapped-stay" fence, in which the cross wires are wrapped around the strand wires, but not locked thereto by staples.

This controversy has to do with the mechanism for forming, delivering, and driving the staples in manufacturing "stiff-stay" woven wire fence. In the early years of the manufacture of this type of fence by plaintiff, as well as other manufacturers, the staples were formed on large staple-forming machines entirely separate from the looms in which the fence was woven; these staples being delivered from the staple-forming mechanism onto a long slide and transferred therefrom by hand to the series of short slides leading to the various staple-driving mechanisms in the looms. This practice was expensive and unsatisfactory, in that each loom required a separate staple-forming machine and a man or boy whose sole duty it was to keep this staple-forming machine operating and supply staples to the staple slides of the loom. In transferring the staples by hand, a great many of them were dropped upon the floor and lost, sometimes falling into the mechanism of the loom and causing breakage and delay.

By 1902 or 1903 this loss of staples amounted to from $4,000 to $6,000 a year in plaintiff's plant, and efforts were made by Hoxie, plaintiff's superintendent, and other employés of plaintiff, to produce a machine that would sort these lost staples, so that they might be used; but these efforts proved impractical and were abandoned. Another Adrian manufacturer undertook to connect up one of these independent staple-forming machines with each of the numerous staple-driving mechanisms in the loom; but this attempt also proved a failure.

Hoxie then gave his attention to the development of a device that would both form and drive the staples in the loom itself, and in the early part of 1905 succeeded in producing a device that has been referred to in evidence as the "Hoxie Tip-Over Device," and is covered by the Hoxie patent, No. 804,403, granted November 14, 1905, which has been offered in evidence by defendant as a part of the prior art. Several months prior to the invention of this tip-over device by Hoxie, one of plaintiff's employés invented the device shown in Gibson patent, No. 804,311, granted November 14, 1905, to Lamb Wire Fence Company, as Gibson's assignee. This Gibson patent was also offered by defendant as a part of the prior art.

The Gibson device was never used, but the Hoxie tip-over device went into extensive use in plaintiff's plant, and was satisfactory in weaving fence of coarse mesh, or with the strand wires spaced well

apart. The space within which this tip-over device can be operated is limited by the length of the staple wire before the staple is formed. In operation the wire is fed into this tip-over device from below, and substantially parallel to the feeding in of the strand wires of the fence. A section of the wire suitable to form a staple is then cut off, and tips over into a plane parallel to that occupied by the cross wires, so that the space occupied by each of these tip-over devices in the loom cannot be less than the length of the straightened out staple, and as a matter of fact must be somewhat greater than this length, in order to provide suitable walls for the chamber holding these severed sections of wire.

To meet the demand for fence of finer mesh, Hoxie invented the device of the patent in suit, in which the staple wire is fed in from below in line with the strand wires and the staple formed in that plane. The completed staple is then turned laterally until it occupies a position parallel with the cross wires of the fence, which plane intersects the plane in which the staple was formed at an angle of 90 degrees, and in this latter plane it is driven about the intersecting fence wires.

The Hoxie patent in suit shows two methods of accomplishing this turning of the staple from the plane of its formation to that of its discharge; one of these methods, shown in Figures 2 to 7 of the drawings, being the provision of a curved guide finger which guides the staple in its movement from forming to discharging position, and the other method, shown in Figures 8 to 11 of the drawings, being the provision of a closed chamber in which the staple falls from forming to discharging position, being assisted in its movement by a pressure block marked b in the drawings.

It is not contended by the defendant that the patent in suit is invalid; but it is asserted that the invention covered was of such narrow scope that the claims cannot be construed to cover defendant's device. The controversy in this connection has centered about the means used by defendant for causing the staples to turn through an angle of 90 degrees from forming to discharging positions, defendant contending that the prior art so limits the Hoxie patent that the claims must be confined to the specific means shown by the Hoxie patent for accomplishing this movement of the staple and that defendant's means is substantially different. It is admitted that the movement of defendant's staples from forming to discharging positions is caused by the force of gravity, as is the case in the Hoxie patent, and it is further admitted that the staples in defendant's device are guided by a curved guide or track, so that they must make a 90-degree lateral turn between forming and driving positions; but it is contended that this is not sufficient to bring the defendant's structure within the claims in issue, and that in order to come within these claims the movement must be a "falling" or "free falling" movement.

[2] While it is true that the terms "drop" and "fall" are used in the Hoxie specifications in describing the movement of the staples, none of the claims in suit call for a dropping or falling of the staple, and to so construe them would be to read into them limitations that are

not required by the prior art, and would also make them of the same scope as other claims not in suit that specifically call for a "dropping" or "falling" movement. Claim 1, for instance, describes the movement as "a free circular falling movement"; claim 4 uses the expression "to permit it to freely fall"; and claims 5 and 8 "to fall by gravity." It is well settled that:

"Where a patent contains both a broad and a narrow claim, and suit is brought on the broad claim, we cannot construe into it a limitation not therein expressed, but which is expressed in the narrower claim, and by which alone one is distinguished from the other. To do so would be making over the contract between the public and the patentee. Bresnahan v. Tripp Co. (C. C. A. 1) 102 Fed. 899, 900, 43 C. C. A. 48; O'Rourke Co. v. McMullen (C. C. A. 2) 160 Fed. 933, 939, 940, 88 C. C. A. 115; National Co. v. American Co. (C. C. A. 3) 53 Fed. 367, 370, 3 C. C. A. 559; Lamson v. Hillman (C. C. A. 7) 123 Fed. 416, 419, 59 C. C. A. 510; Mast Foos & Co. v. Dempster Co. (C. C. A. 8) 82 Fed. 327, 333, 27 C. C. A. 191; Duncan v. Cincinnati Co. (C. C. A. 6) 171 Fed. 656, 663, 96 C. C. A. 400; Sheffield Co. v. D'Arcy (C. C. A. 6) 194 Fed. 686, 116 C. C. A. 322." National Tube Co. v. Mark, 216 Fed. 507, 521, 133 C. C. A. 13 (C. C. A., Sixth Circuit).

A large number of patents were offered in evidence by defendant, but only five of them were referred to in argument, viz.: Grasberger, 620,444; Saunders, 623,834 and 647,635; Gates, 686,448; and Snedeker, 806,440. The two Saunders patents are for box-hinging machines, and were cited by the Patent Office examiner against some of the Hoxie claims as originally filed, among them claim 2 in suit. They show a revolving plunger for carrying a staple around from forming to discharging position, and the only change made in claim 2 because of these citations was the insertion of the word "nonrotatable" before the word "plunger" in the claim of the patent. Defendant's expert did not refer to these Saunders patents as in any way anticipating the claims in suit. The Grasberger patent is for a staple forming and driving apparatus "adapted particularly for use in connection with wood veneer butter dishes," and the Gates patent is for a brush machine. In neither of these patents is there any turning of the staples, which are formed and driven in the same plane. Defendant's superintendent Mills testified:

"RXQ 171. It would not be possible in a wire fence making machine to feed the wire in and form the staples in the same plane in which they are discharged, would it? A. No."

Snedeker, 806,440, is the only patent relied on that relates to the wire fence art, and shows a complicated machine, in which five distinct and widely separated mechanisms are provided for doing the work that is done by Hoxie's compact and unitary structure. Referring to Figure 6 of this Snedeker patent, which is reproduced on page 28 of plaintiff's record, the parts marked *69, 77, 78, 79,* and *90* cut the wire into the proper lengths to form staples; parts marked *41, 83, 84,* and *85* form the staples; the long slide *86* conveys the staples to another part of the machine; parts *87* and *92* deposit the staples one at a time on the strand wires; and parts *101, 106, 108, 109,* and *111* tie the staples around the intersecting wires. It was claimed by counsel that the staples in Snedeker are turned through an angle of

90 degrees between forming and discharging positions; but this is not true in the sense in which the staples are turned in the Hoxie device. Hoxie turns them laterally, without removing them from the chamber or recess in which they are formed, and they are then driven by a plunger which has the same rectilinear movement as the forming plunger. This is not in any sense true of the Snedeker mechanism.

It was argued that all defendant has done is to take the Grasberger staple-forming device and place it alongside of defendant's old style driver, connecting the two by a curved guide, or that it has merely taken the Gates device and placed therein a curved guide, instead of the straight guide used by Gates, and that neither of these changes required more than ordinary mechanical skill. It is significant that while defendant's superintendent, Mills, says he recognized for 10 or 12 years the desirability of producing just such a device as defendant is now using (during all of which time he continued to use the old hand fed method), and that he has known for fully 20 years how to form staples in the manner adopted by defendant, it was not until after the issuance of the patent in suit, and after Mills had seen the modified Hoxie device in use in plaintiff's plant, that he was prompted to exercise the mechanical skill which defendant's counsel contend was all that was needed to produce the defendant's device. It is likewise significant that Mills filed an application for patent fully illustrating defendant's device, but did not claim to have made any invention in connection therewith. It is but reasonable to assume that, had Mills developed defendant's device before the device of the patent in suit, he would have claimed protection therefor as an inventor, and there is no doubt but that he would have been entitled to just such claims as are involved herein.

It is contended by defendant that the Hoxie device as covered by the patent in suit is intended only for horizontal or substantially horizontal use; but the fact is that the only figure showing the position in which it is intended for use, namely, Figure 1, shows it as nearly vertical as horizontal. The Hoxie specification and claims do not limit him to the use of the device at any particular angle, and defendant cannot evade the claims in issue by standing the device up on end and making only such changes therein as were required to make it perform its duty in this particular position. The claims in suit read as clearly on defendant's device as used in practice as they do on the drawings of the Hoxie patent.

It must therefore be held that the device made and used by the defendant is an infringement of the Hoxie patent in suit. The defendant will be permanently enjoined from manufacturing or using staple forming and discharging mechanism in infringement of the Hoxie patent, No. 879,965, and an accounting will be had of damages sustained by complainant as a result of the infringement by defendant.