JACKSON SKIRT & NOVELTY CO. v. ROSENBAUM et al.

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1915.)

No. 2626.

1. PATENTS ⟨⟩328—AGGREGATION OF OLD ELEMENTS—SKIRT.
   The Smith & Malnight patent, No. 750,234, for a skirt, covers an assemblage of old elements from the garment-making art, largely acting independently of each other, and not in combination, to produce a new unitary result, and is void for lack of patentable invention.

2. PATENTS ⟨⟩80—EVIDENCE OF INVENTION—GENERAL USE.
   It is only when the patentability of a device is doubtful that a showing of general use may turn the scale.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 102, 103;  Dec. Dig. ⟨⟩80.]

Appeal from the District Court of the United States for the Western District of Michigan;  Arthur C. Denison and Clarence W. Sessions, Judges.

Suit in equity by the Jackson Skirt & Novelty Company against Louis Rosenbaum, Goddie Rosenbaum, and Edwin F. Rosenbaum, jointly and severally and as copartners under the name of the Henrietta Skirt Company, and the Samuel Rosenbaum & Sons Company. Decree for defendants, and complainants appeal.   Affirmed.

See, also, 190 Fed. 197.

W. H. C. Clarke, of New York City, for appellant.

F. L. Chappell, of Kalamazoo, Mich., for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge.   This is a bill in equity brought by the appellant, The Jackson Skirt and Novelty Company, against the appellees, Louis Rosenbaum and others, for the alleged infringement of letters patent No. 750,234, on skirts, issued to the appellant, on January 19, 1904, as the assignee of the alleged inventors, W. T. Smith and J. V. Malnight.   Among the defenses relied on were the invalidity of the patent for want of invention, and non-infringement. After final hearing on the pleadings and proof, the court below entered a decree dismissing the bill of complaint, with costs;  from which the plaintiff has appealed to this court.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The specification of the plaintiff's patent states:

"The object is to prevent [provide] a skirt having its back width constructed in such manner as to give the desired fullness at the rear without bunching or wrinkling, whereby the same shall readily conform itself to the figure of the wearer and shall be readily yieldable to the different motions of the body without any binding or drawing action. A further object is to obviate the presentation of a placket at the rear which will be liable to open and thus expose the under garments of the wearer. * * * A further object is * * * so to associate the fastening means with the waistband of the garment as to cause the same when the garment is on the wearer to be entirely shielded from view. With these and other objects in view * * * the same consists in the novel construction and combination of parts of an underskirt, as will be hereinafter fully described as claimed."

Figure 7 of the drawings showing the manner of constructing the rear part of a skirt in accordance with the invention claimed, in which the fastening device is of the "hook and eye" style, is here reproduced.

The structure embodied in the patent is thus described in the specification:

"Referring to the drawings, *1* designates the upper portion of the body of a skirt, the same being provided at its side portions with two plackets, *2* the same extending from the waist to a point at or slightly below the crest of the hips. The back width (designated generally *3*) may be constructed of a single piece of material or of two widths, as shown, is integral with the skirt, and is plaited, as at *4*, to give the desired fullness at the rear to cause it closely and neatly to hug the form of the wearer, thus to prevent bulging or wrinkling of the skirt, which in tight-fitting outer garments would be objectionable. To the edges of the 'back width' * * * are secured side wings *5* which extend from the waist slightly below the bottoms of the plackets and are approximately triangular in shape, with the bases at the bottom of the plackets, so that under all movements of the body of the wearer the plackets will be positively closed, as the base portions of the side wings will extend inward such distance as to be prevented from working out of the plackets under any condition of use. The side flaps *6* formed by the plackets, are designed to be folded in over the side wings, and over a portion of the back width on both sides of the garment, thus further preventing the plackets from opening. The waistband *7* is a multi-ply structure * * * the outer ply of which is formed by the material of the skirt and the inner plies, by a thickness of the material of the skirt folded upon itself and associated with a separate strip *8*, to which the hooks *9* and eyes *10* of the side flaps * * * are secured, the hooks *11* and eyes *12* of the back width being secured to the outer ply of its waistband. By this arrangement when the hooks and eyes of the respective members of the waistband are in interlocked engagement they will be entirely shielded from view and will thus not only assist in giving a finished appearance to the garment, but by the manner in which they are housed the presentation of obstructions which will tend to wear away a garment secured around the waistband of the skirt will be prevented."

The patent contains only one claim, as follows:

"A skirt provided with a plaited back width and with a placket adjacent to each edge thereof, free approximately triangular wings at the edges of the back width and projecting laterally beyond the lines of the plackets, the

bases of the wings being disposed downward, side flaps foldable over the wings and lying in contact therewith, a waistband carried partly by the back width and partly by the flaps, and spaced fastening means disposed between the back width and the side flaps."

Judge Sessions, who heard the case below, was of opinion, upon the proof, that the patent is a "mere aggregation of old elements, assembled in an old way, and for the most part acting independently of each other, rather than a combination of co-acting elements which involve patentable invention," and, in other words, "the product of the skill of the dressmaker or tailor and not the conception of the inventor"; and further, that, even if it be assumed that it is a patentable combination, still the claim of the patent is so extremely limited in form that a slight variation therefrom will avoid infringement, and that infringement had not been shown in any of the three models of skirts manufactured by the defendants.

It clearly appears from the many prior patents offered in evidence by the defendants, that the six elements entering into the combination of mechanical features claimed by the patent, namely, the plaited back width, the adjacent side plackets, the free projecting wings, the side flaps folded thereon, the waist band carried by the back width and flaps, and the spaced fastening means disposed between them, are each old in the prior garment making art, being separately disclosed therein in forms which are either the same as those in which they appear in the plaintiff's patent or closely analogous thereto. Thus, for example, the McGraw patent, No. 643,775, on improvements in skirts, shows a skirt formed with a waist band and placket, with an extension piece underlying the flap of the placket whose lower edge is described as preferably disconnected from the body of the skirt the greater portion of its length, closely corresponding to the free triangular wings in the plaintiff's patent projecting from the edges of the back width beyond the lines of the placket; and also a waist band carried partly by the skirt and partly by the flap over the placket, with adjustable fastening devices disposed between them, as shown in the figure which is here reproduced.

The appellant's contention, however, is that the six mechanical features called for by its patent have therein a special and peculiar relation to each other, which is essential to the adjustment of the skirt to large and small figures, without destroying the fit, and are so combined as to act and react on each other for the purpose of producing the desired result, thus constituting a true combination of mutually co-
acting parts; and that, when so combined, they serve to secure several advantages, which are thus recapitulated in the appellant's brief: (1) holding the skirt in place; (2) causing it to conform to the figure and yield readily to the different motions of the wearer; (3) adapting

it to be adjusted to different sized figures; (4) providing registry between the plackets of the under and outer skirts; (5) concealing the fastening devices; (6) preventing the fastening devices from coming in contact with the garments; and (7) adapting it to be employed in connection with all changing styles and fashions.

Clearly, however, as appears both from the structure of the patent itself and the several advantages thus enumerated, the effect of its several mechanical features is not to secure one new unitary result or advantage by the reaction of their several functions, but rather to secure, through these several mechanical features, acting largely independently of each other, various results and advantages, relating in the main, to entirely separate and independent matters, and resulting from the assemblage of these various mechanical features in one structure in the form of an aggregation rather than a combination. Thus, without analyzing in detail the function of these several mechanical features, it may be said, by way of illustration, that the free wings projecting from the back width under the flaps of the plackets obviously have no function in either holding the skirt in place, causing it to conform to the motions of the body, adjusting it to differently sized figures, concealing the fastening devices, or preventing wear and tear therefrom, but relate, at the most to the prevention of exposure through the placket openings and to the fit and appearance of the flaps over the placket openings; in other words, that these free wings underlying the flaps do not in any manner co-act with the other mechanical features of the plaintiff's structure in producing the other results and advantages which they independently obtain.

Since, therefore, the assemblage in this patent of the old elements from the garment-making art does not produce a new unitary organization due to the joint and co-operating action of the old elements, but constitutes, in its essential features, a mere aggregation of old elements, in which, in the main, each performs its own appropriate function in substantially the old way, the result must, under the well established rule, be held to constitute a mere aggregation of elements and not a patentable combination. Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719; Richards v. Elevator Co., 158 U. S. 299, 302, 15 Sup. Ct. 831, 39 L. Ed. 191; National Tube Co. v. Aiken (6th Cir.) 163 Fed. 254, 260, 91 C. C. A. 114; Sheffield Car Co. v. D'Arcy (6th Cir.) 194 Fed. 686, 693, 116 C. C. A. 322; Autosales Gum Co. v. Caille Co. (6th Cir.) 224 Fed. 473, —— C. C. A. ——, and cases therein cited. And we therefore entirely concur in the conclusion of the court below that the plaintiff's structure, when considered in view of the prior art, involved merely the mechanical skill of a dressmaker or tailor in assembling the old elements which it contains for the production of an aggregate rather than a combined effect, and did not disclose patentable invention.

[2] Furthermore, while stress has been laid upon the commercial success of the plaintiff's skirt, much of this success is apparently due to business enterprise and advertising. But however this may be, we do not think the question of patentability doubtful; and it is well settled that it is only when the patentability of the device is doubt-

ful that a showing of its general use may turn the scale. Standard Caster Co. v. Socket Co. (6th Cir.) 113 Fed. 162, 166, 51 C. C. A. 109; Cincinnati Traction Co. v. Pope (6th Cir.) 210 Fed. 443, 449, 127 C. C. A. 175.

Being, therefore, of opinion, for the reasons above stated, that the plaintiff's patent is invalid for want of patentable invention, we deem it unnecessary to consider the alternative question of infringement ruled on by the court below or the other matters of defense relied on by the appellees.

A decree will accordingly be entered affirming the decree below and dismissing the appeal, with costs.