## GOULD & EBERHARDT v. CINCINNATI SHAPER CO.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1912.)

No. 2,150.

1. PATENTS ( 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.
    The bringing together of previously separated parts in a unitary organization, so that they act together and produce a more beneficial result than when the parts operate separately, may be invention; but where the elements operate in no different way, and have no different relation to each other when in a self-contained form than when one element is detached, such combination is not invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*
    Patentability of combinations of old elements as dependent on result attained, see note to National Tube Co. v. Aikens, 91 C. C. A. 123.]

2. PATENTS (§ 328*)—INVENTION—CRANK PLANER.
    The Eberhardt patent, No. 541,475, for a crank planer, covers a combination of old elements, which, in view of the prior art, involved no more than mere mechanical skill, and is void for lack of invention.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Suit in equity by Gould & Eberhardt against the Cincinnati Shaper Company. Decree for defendant, and complainants appeal. Affirmed.

Following is the opinion of the Circuit Court by Sater, District Judge:

The bill charges the infringement of patent No. 541,475, granted June 25, 1895, to the complainant's assignors. The patent issued for certain new and useful improvements in crank planers, known also as "shaping machines." The specification recites among other things, that "the present invention relates * * * to a means for bracing the work-holding vise or table," and it is such means only that is involved in this proceeding.

The working parts of the machine are supported by the column or box frame A, on which is mounted a reciprocating ram B, carrying at its forward end a cutting tool d'. C is the cross-head or rail upon the front of the frame. F is a table attached to the front of the saddle and formed with vertical faces F' having horizontal slots G. The table is secured in any convenient manner to the saddle D, which is hooked over the rail or cross-head at its upper end and bears against the face of the rail at its lower end so as to give sufficient bearing surface to hold the table in position, and is designed to permit the table to travel with its upper surface in a predetermined plane of movement. The rail is vertically adjustable by means of a screw N supported at its lower extremity on a projection from the column or frame A, and is operated by gears. By means of the screw the table may be so adjusted as to accommodate the height of the particular metallic work-piece which is about to be or is actually being cut. The work-piece is firmly secured in the desired position by means of a vise H resting on the table.

As thus far described, the device is of a common type, known and used long prior to the date of the patent in question. In the operation of such shapers, as the cutting tool travels over the face of the working piece, there is present a thrust horizontal and outward from the machine, and also a downward deflection or downward bearing tendency at the outward end of the work table. This tendency, however, under given conditions, as stated by the witness See, is absent, and the cutting tool then lifts or tends to lift the work-piece upward. The arrangement of the saddle on the rail or cross-head is intended to prevent the downward bearing or downward deflecting tendency, which, when present, operates against precision in the work. The patentees, to overcome such deflection when it occurs, and to afford additional support and rigidity to the table, added to the usual and well-known type of machine by extending the base of its supporting column or frame forward beneath the table, and near the outer extremity of such extended base placed an adjustable sliding standard or leg L. The upper end of the leg is secured to the table. Its lower end is provided at its bottom with a sliding foot, which slides on the extended portion of the machine base. The patentees in their specification describe the standard or leg and its purpose thus:

"The foot of the standard is shown with sharp angles at its corners m, and is freely movable upon the bed plate J while the saddle D is fed longitudinally along the cross-head C, during the operation of the machine. The table and vise are thus supported against the thrust of the tool, and the cut is more perfectly parallel with the bed plate than if the table were allowed to yield. The standard is made with a vertical face where it is fitted against the table F, and such vertical face adapts it to apply adjustably to any portion of the table when the cross-head is raised or lowered. The shape of the table is therefore immaterial, and a single bolt hole in the table would operate adjustably to secure the standard in conjunction with the slot therein. * * * The sharp corners upon the foot of the standard L are adapted, as the foot slides over the surface of the bed plate J, to push the chips and grit before it and thus prevent the same from crowding under the standard and pressing it upward; which would affect the horizontality of the table F and vise H. The slots K are provided in the bed plate chiefly to permit the escape of the

chips and grit from beneath such foot as it is pushed along by the sharp corners *m*."

The only features of the patent with which we are concerned are the adjustable leg and the extension of the machine base beneath the table as a support for such leg. The claims alleged to be infringed are 5 and 6. Claim 5 is as follows, the numerals being inserted to indicate the elements of the combination claimed:

"In a crank planer, the combination, with (1) the frame having (2) the crosshead *C* provided with (3) means for adjusting the same vertically upon the frame, and having (4) a saddle movable thereon with (5) the table *F*, of (6) the base having a bed plate projected beneath the table *F*, and (7) a standard bolted adjustably to the table and fitted at its lower end to slide upon the bed plate, substantially as herein set forth."

The sixth claim is phrased differently from the fifth but the only difference that need be noted relates to the standard. In the former the leg is described as "a slotted standard *L* bolted adjustably to such table and having a foot adapted to slide upon the bed plate." The sixth claim will not be further noticed, for the two following reasons: Complainant's expert in rebuttal, cross-question 284, eliminates the alleged infringement of that claim, and there can be no infringement of it, in any event, if there is none as to claim 5.

The answer denies infringement. It asserts prior use, want of utility and of acquiescence on the part of the public in the patent, want of novelty and of patentable invention. In oral argument defendant's counsel said: "This is one of those cases in which, if the patent is good for anything at all, our structure would come within the proper purview of the invention, if there is any." It follows, therefore, that, if the patent is valid, infringement exists.

The prior Eberhardt patent, No. 409,941, issued August 27, 1889, is for essentially the same device as that covered by the patent in suit, excepting that it does not cover the extended base and adjustable standard or leg. The complainant's machine found a considerable market, and to that extent has supplanted other shapers. It has not, however, monopolized the trade. It has rather taken its place among other planers or shapers as a desirable machine. The several catalogues, photographs, and other exhibits in evidence, including the catalogues of the complainant, show various types and sizes of shapers which are manufactured and sold having substantially the characteristics, excepting in the two respects under consideration, of the machine alleged to be infringed. The absence of a supporting leg and an extended base does not imply a defective or faulty machine. It is incredible that the usual type of machine, wanting such extended base and support, would be manufactured or would be bought by consumers, unless there was a demand for it, or if it failed to do the work required of it. The value of the support and extended base arises in the performance of heavy work and in operating on a heavy work-piece. The ordinary well-known machine possesses great strength and rigidity and manifestly answers the purpose of usage in ordinary work, and its table in the performance of such work does not deflect or bend downward so as to interfere with its accuracy. I am satisfied that the witness See is correct in his statement that the use of a supporting leg or standard is advisable or necessary only in heavy work, and with a heavy work-piece. The adjustable leg and the supporting extended base may be and doubtless are conveniences which may be used or not, as circumstances require; but that they are deemed essential in all instances or in the performance of the greater part of the work to which such machines are applied is refuted by the continuous manufacture and sale of machines not having them, and gives color at least to the statement that the extended base and supporting standard are good selling points rather than necessities.

The use of a support, by whatever name it may be called, to bear heavy pressure or immovable loads, and to meet emergencies, would suggest and has suggested itself to mechanics operating such machines. It does not require mechanical education or the inventive faculty to discover the propriety, and, in some instances, the necessity of the use of such mechanical expedients. Examples of such usage appear in Day's Exhibits 1 and 4, Johnson's Exhibit 1, the Niles boring machine, and the radial drill with extra leg. But it is said that the supports shown in the above-mentioned Day and Johnson ex-

hibits rest on a base specially constructed, constituting no part of the machine itself, and that bases may not be truly constructed and do not form any part of a portable complete self-contained machine. Portability is not mentioned either in the specification or the claims of the patent, nor does it appear that the use of supporting bases which are not integral parts of the machine in anywise interferes with the efficiency of the shapers in connection with which the temporary supports were used to carry heavy loads, or with the precision of their work. If the support rests on a continuous base, the difference lies rather in providing a continuous foundation for the shaper than separate foundations for the support of the machine and of the leg, respectively. In either event the foundation would have to be truly built to insure accuracy in the machine's finished product. The separate foundation and prop perform the same office, and are instrumental in effecting the same result, as those constituting a part of the complainant's machine. Invention or discovery is not involved in making the base a unit, instead of divisible into two parts. The Richards patent, No. 258,120, issued May 1, 1882, discloses a planer with a base extended beneath an adjustable table which carries the work. For the vertical adjustment of the table is a screw, which also acts as a support which transmits the downward bearing strain of the table and its load to the extended base.

In the Fox patent, No. 489,734, issued January 10, 1893, the work-holding structure is vertically adjusted upon the frame of the planer by means of a vertical screw. The base of the frame extends outward beneath the table, and bears the superimposed strain of the table and the work-piece. Brainard's patent, No. 255,409, bearing date of March 28, 1882, shows an elevating screw for vertically adjusting the table in the device. It rests upon a projection of the base of the machine frame. From the necessity of the case it bears the downward strain of the table whenever the operating of the machine creates a downward thrust. Another prior device in which the supporting adjustable screws or standards transmit downward strains and thrusts to the base frame extended outward beneath the working table is seen in the Niles boring machine. The characteristics of this machine are given in detail by the witness See, and the respects in which the complainant's machine resembles it as to parts and the office which such parts perform, are pointed out.

Adjustable supports or standards appear in some of the above specifically cited devices. Other illustrations are seen in the Glad patent, No. 144,530, dated November 11, 1873, the Reagan patent, No. 104,201, issued June 14, 1870, the Day Exhibits (drawings) 3 and 4, the Day Exhibit 2, and Johnson Exhibit 1.

When complainant's expert was first on the witness stand, cross-question 23, having reference to the Johnson Exhibit, was propounded to him. The question and answer, on account of their significance, are quoted as follows:

"XQ. 23. Would a bed plate, located as the bed plate $J$ in Fig. 1 of the patent, separated from the frame of the machine, but rigidly fixed in a horizontal plane exactly parallel with the planes of the horizontal movements of the table, and provided with the adjustable support attached to the table and arranged to move on the bed plate and rigidly support the table in the same horizontal plane, come within the claims of the patent?

"A. It would not be included literally in the terms of the claims; but it might be construed or regarded by the court as an equivalent for the terms of the claim because it would perform most of the function which can be performed by the structure of the claims.

"The suggested structure would not include that feature of the claims which is specified in the words 'the base having a bed plate projected beneath the table $F$,' as in claim 5, or the words 'the frame having a base provided with the plane bed plate $J$,' as in claim 6.

"The proposed structure would support the table in precisely the same manner and by the same combination of operative elements as the structure defined in the claims; but the proposed structure would not constitute a self-contained portable machine, such as is produced by the structure of the claims.

"As this portability constitutes the only difference between the two structures, and is not in any way included in the essential parts necessary to sup-

port the table, it seems to me that the portability may be ignored, and the proposed structure regarded as practically within the claims of the patent.

"I do not, however, make such a contention at the present time, as it would be the function of the court alone to determine whether or not the two struc-tures would be mechanical equivalents."

My disposition was to dispose of this case on the oral arguments. I have, however, examined the entire record and read all of the briefs. My conclu-sion is that the complainant's device did not involve invention, and is only such an obvious improvement as would suggest itself to a mechanic skilled in the art. For this reason, the bill is dismissed, at complainant's cost. An order may be taken accordingly.

W. R. Wood (Wood & Wood, on the brief), for appellant.
Arthur Stem, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is a suit for infringement of United States patent No. 541,475 to Eberhardt, June 25, 1895, for improvements in crank planers. In the Circuit Court the claim involved was held invalid for lack of invention, and the bill dismissed. In crank planers or shapers, of the type to which the improvements in question pertain, the metal to be planed is held by a vise supported on a heavy metal table on a plane slightly below that of the cutting tool, which is carried across the surface of the work by a power-propelled reciprocating ram. To enable the tool to make successive parallel movements across the face of the metal to be planed, the table is connected at its rear end to a saddle, which is fed horizontally to the frame of the machine (and at right angles to the movement of the ram), along and bearing against a cross-head attached to the machine frame; the former being vertically adjustable by a screw. The specification states that "the strain of the tool upon any work-piece fastened in the vise or upon the table tends to thrust the table downward," and the Eberhardt invention, so far as the claim sued on is concerned, relates to "a means for bracing the work-holding vise or table." This means consists of a standard clamped to the table (adjustable as to height) by a bolt inserted through a slot in the standard into one of a series of parallel slots on the vertical face of the table (but one slot in the table being absolutely necessary); the standard being made to rest and slide upon the bed plate of the frame of the machine, which is extended for the purpose so as to come under, and parallel to, the table and cross-head. The specification states that:

"The table and vise are thus supported against the thrust of the tool, and the cut is more perfectly parallel with the bed plate than if the table were allowed to yield."

The only claim involved reads as follows:

"5. In a crank planer, the combination, with the frame having the cross-head C provided with means for adjusting the same vertically upon the frame, and having a saddle movable thereon with the table F, of the base having a bed plate projected beneath the table F, and a standard bolted adjustably to the table and fitted at its lower end to slide upon the bed plate, substantially as herein set forth."

No complete anticipation is found in either patent disclosure or use. The only question we are required to consider is whether, in view of the prior art, the combination stated in the claim involves invention.

The only elements of the combination claimed to be novel are the table-supporting standard clamped as above stated and the extended bed plate on which the standard slides. Bed plates projected forward so as to extend under, and parallel to, the table, and cross-head were not new. Examples are found in the Day No. 7 and Juengst shapers and in the Niles radial drill, in neither of which machines, however, is the table supported by a standard; the bed plate extensions there found being presumably used (in part at least) for clamping thereto work too high to be carried on the table. Nor was it new to support the table by a leg resting on the projected bed plate, as was done in both the Fox and Richards metal planers, and in the Brainard gear-cutting machine. In neither of these machines, however, were the standards bolted adjustably to the table, nor did they slide on the extended bed plate. Neither were they located at the extreme outer edge of the table, and so did not perhaps protect against the thrust of the tool as effectively as in the device in question. But it was not even new to support the table by a standard bolted adjustably thereto, substantially as in the device of the patent in suit, sliding on a bed plate which was under the table, but was not extended from or connected with the frame bed plate. Such device is shown in Johnson's shaper and in the Day Exhibit No. 2, in both of which the standard has a roller foot. The Eberhardt device is an advance upon the prior art only in that it uses the extended bed plate, which was old, as the foundation on which the standard (also old) slides (rather than rolls), instead of employing a separate bed plate. This step was certainly a short one. It is, however, ably and forcefully urged that the step was an important one, because of the necessity to the effective support of the table that the plate supporting the standard be always in a plane parallel to that of the cross-head, and because of the difficulty of maintaining such parallelism unless the supporting plate be a rigid extension of the frame bed plate. This unitary or "self-contained" feature has undoubted advantages.

The evidence also indicates that, apart from the "self-contained" feature, the device in suit has utility, being especially useful where the metal to be worked is very heavy or the thrust of the tool unusually great; and that it has been favorably received by manufacturers and users, having to a large extent taken the place of the old construction.

[1] It is insisted by complainant that the considerations above stated show invention, as distinguished from mere mechanical skill. Ordinarily the mere making in one piece of a device, or part of a device, formerly made in two pieces, is not invention. But the bringing together of previously separated parts in a unitary organization, so that they act together and produce a more beneficial result than when the parts operate separately, may be invention. But where, as here, the elements operate in no different way, and have no different relation to each other when in a self-contained form than when one element is

detached, such combination is not invention. Standard Caster Co. v. Caster Socket Co. (C. C. A. 6) 113 Fed. 162, 51 C. C. A. 109; National Tube Co. v. Aiken (C. C. A. 6) 163 Fed. 254, 261, 91 C. C. A. 114; Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, decided by this court November 7, 1911.

The considerations of prior demand, unsuccessful attempts to supply the demand, utility, and public favor, are evidence of invention, and in an otherwise doubtful case might turn the scale in favor of its existence. But neither or all of these considerations, regardless of all others, necessarily prove invention, the existence of which is always ultimately a question of fact, to be determined upon a consideration of all applicable facts and conditions.

[2] Having in mind all the considerations urged by defendant, and taking into account the prior art, it is clear to our minds that the use of the projected bed plate, in connection with the table-supporting standard resting thereon, involved no more than mechanical skill, and that the combination in question is void for lack of invention.

The decree of the Circuit Court is affirmed.