## WAGNER et al. v. MECCANO LIMITED.

(Circuit Court of Appeals, Sixth Circuit.    November 16, 1917.
On Rehearing, January 14, 1918.)

### Nos. 2977, 3014.

1. PATENTS ⬡70—ANTICIPATION—PUBLICATION.

An inventor's own publication of the device for which he seeks a patent more than two years prior to the application is a disclosure, within Rev. St. § 4886 (Comp. St. 1916, § 9430), and precludes the patenting of his invention.

2. PATENTS ⬡21—"INVENTION"—"MECHANICAL SKILL."

The adaptation to metal mechanical toys of previously disclosed inventions used in wooden toy-building blocks does not amount to "invention," but is a mere exercise of "mechanical skill."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention; First Series, Mechanical Skill.]

3. PATENTS ⬡19—"INVENTION"—WHAT CONSTITUTES.

The mere improvement of a well-known device without substantial change in either means or result does not amount to invention.

4. PATENTS ⬡20—"INVENTION"—WHAT CONSTITUTES.

A device, simply uniting two parts of a previously known device into an integral construction, does not amount to invention, particularly where the two parts had previously been joined mechanically.

5. PATENTS ⬡328—"INVENTION"—ANTICIPATION—"MECHANICAL SKILL."

Hornby patent, No. 1,079,245, for rectangular plates and so-called sectors for use in connection with mechanical building toys, consisting of many strips with slotted holes which could be united to form ingenious devices, as limited by the prior art, *held* not to show "invention" disclosing only "mechanical skill."

6. COSTS ⬡60—ALLOWANCE—DEPOSITION.

Equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), declares that by demand served 10 days before trial either party may call on the other to admit in writing the execution or genuineness of any document, letter, or other writing, saving all just exceptions, and if such admission be not made within five days after such service, the cost of proving the document shall be paid by the person refusing to make such admission, unless the trial court shall find that the refusal was reasonable. Complainant called on defendants to admit in writing the execution and genuineness of documents to be used in evidence. Defendants' counsel refused to make admission, and later they notified complainant's counsel that they would stipulate the matter when the two should meet in the town where one of the depositions was to be taken. Complainant by telegram declined to accept the stipulation except on defendants' payment of costs and expenses incurred to date. No response was made to complainant's answer, and at the taking of depositions complainant's counsel stated that, as no reply had been received to such telegram, the taking of depositions on behalf of complainant would be resumed. *Held*, that despite defendants' contention that complainant was in control of the documents and might have proved them in the ordinary course, the allowance to complainant

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of costs incurred in proving such documents was not an abuse of the trial court's discretion.

7. COSTS ⊂⊃13—EQUITY—ALLOWANCE.

Apart from court rules, the taxing of costs in equity cases is within the sound discretion of the trial court.

Appeals from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Meccano Limited against F. A. Wagner, trading as the American Mechanical Toy Company, and the Strobel & Wilken Company, who counterclaimed. From a decree for complainant (234 Fed. 912), and an order denying a request to dismiss the appeal, remand the record, and on the granting of such request to reopen the case, defendants appeal. Affirmed in part, and in part reversed, and causes remanded, with directions.

See, also, 235 Fed. 890, 149 C. C. A. 202; 239 Fed. 901. 153 C. C. A. 29.

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, for appellants.

Healy, Ferris & McAvoy, of Cincinnati, Ohio (Reeve Lewis and Ralph L. Scott, both of New York City, Wm. B. Kerkam, of Washington, D. C., and Mauro, Cameron, Lewis & Massie, of New York City, of counsel), for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge. The Meccano Limited, a British corporation, is engaged in the manufacture and sale of outfits which are adapted to ready and repeated assembling of parts into a variety of mechanical toys; and with each main outfit it supplies a manual of instructions and illustrations for use in building the toys. The corporation brought suit in the court below against Francis A. Wagner, trading as the American Mechanical Toy Company, and against the Strobel & Wilken Company, charging defendants with acts of unfair competition consisting, in effect, of sales of outfits substantially identical in parts and in appearance, shape, and dimensions with those of plaintiff, and accompanied by manuals of instructions in which defendants copied, counterfeited, and simulated the appearance and arrangement, illustrations and language, of plaintiff's manuals, particularly those on which copyright registrations had been secured; also with acts of infringement of plaintiff's copyrights, consisting in substance of copying and counterfeiting plaintiff's Meccano Royal Book of Instructions, No. 291,375, June 22, 1911, and Meccano Manual of Instructions, No. 294,670, August 14, 1911; and also with infringement of plaintiff's certain letters-patent. The defendants answered, admitting that Wagner, under the trade-name mentioned, manufactures outfits known as the "American Model Builder," and that he and his codefendant sell such outfits accompanied by manuals of instructions, alleging that by reason of anticipation and the prior art the

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

patent sued on is void, and denying the allegations of unfair competition and of infringement alike of the copyrights and patent in suit; and by counterclaim they sought damages against plaintiff for alleged unfair competition on its part. The case was heard below on its merits, and decree was rendered in favor of Meccano Limited on all the issues, save only as to one feature of certain of the patent claims, with the usual order of injunction and accounting; and the counterclaim was dismissed. Defendants appealed, and will hereafter be referred to as appellants. Subsequently, and before the statement of evidence had been settled in the court below and so before the transcript had been filed in this court, appellants obtained an order here empowering the court below, if it should deem proper, to reopen the case and to receive further evidence, including an alleged newly discovered anticipation of the patent in suit. Later, appellants moved the trial court to certify to this court a request to dismiss the appeal and remand the record, and, upon the granting of such request, to reopen the case, vacate the injunction and decree, and allow a hearing upon the alleged newly discovered evidence. The trial judge regarded the evidence as insufficient to warrant a change of his previously expressed views of the case, and so denied the motion. Appeal was also taken from this order.

[1-5] The opinion below is reported in (D. C.) 234 Fed. 912, and the facts presented before the first appeal are there considered. We approve the court's conclusions upon the issues joined, except the one in relation to the patent in suit. This patent, No. 1,079,245, was issued by the United States to Frank Hornby, a British subject, November 18, 1913, and on the same day was assigned by him to Meccano Limited. The title selected to indicate the nature and design of the claimed invention is "Perforated Plate," and in the specification the patentee states that he had "invented certain new and useful improvements in perforated plates." He further states:

"This invention relates to improved elements, and combinations of such elements with other elements or parts, to be used in the construction of toys or working models of machinery, structures, or similar mechanisms."

The specification also, in effect, states that there was then an existing system for making up toys from "perforated elements, embodying also the use of gear wheels, pulleys, spindles, and the like," [1] that the various members were adapted to be assembled and mounted in these perforated parts and connected by bolts and nuts, and that it had been found desirable, in order to secure greater rigidity in the structures and to avoid the use of many small strengthening strips, "to

---

[1] The specification does not in terms state the origin of or distinctly describe the "perforated elements" embraced in the existing system so referred to, yet so far as those elements, standard parts, are shown in the drawings or mentioned in the specification, they and the method of assembling them were old in the prior toy-building art. Hornby U. S. patent, No. 810,148, January 16, 1906; Von Leistner British patent, No. 14,442, November 9, 1895; Jenss British patent. No. 10,040, June 22, 1895; Walters U. S. patent, No. 262,863, August 15, 1882; Lilienthal German patent, No. 46,312, April 8, 1888; Wing U. S. patent, No. 916,243, March 23, 1909; Walther German patent, No. 153,854, June 4, 1903.

provide perforated flanged plates and angle brackets." And thereupon the specification states:

"The present invention relates to certain forms of perforated sheet metal elements for use as aforesaid. In all the forms the plates having perforated flanges, preferably integral, are an essential feature of the invention."

The perforated plates so referred to are illustrated by accompanying drawings; there are two of these plates, Fig. 1 showing in perspective a "sector shaped plate," its width tapering toward one end, and Fig. 4 a "rectangular shaped plate." They consist of sheet metal with apparently integral flanges along their sides and at right angles to the bodies of the plates. The body of the rectangular plate has several rows of perforations equally spaced both ways, and each flange a single row, equally spaced and disposed lengthwise of the flange. The body of the sector plate has a single row of perforations extending lengthwise and in the center of the plate, with a similar row transversely disposed near each of its ends, and each flange has a similar row disposed lengthwise—all uniformly spaced. There are still other drawings representing a number of different toys which may be built up by associating one or both of these plates with perforated metal strips, perforated angle brackets, clips, wheels, and ropes, and by suitably disposing the parts and fastening them with bolts and nuts. It is to be inferred from the specification and certain of the claims, that the parts thus named, other than the plates, are but a portion of "standard parts" which may be used in combination with the plates. However, no specific parts except only the plates are called for by any of the claims; and hence the standard parts may be safely eliminated from the consideration of the patent except as an undefined class adapted to toy building in combination with the plates. Thus the two plates and their qualities are controlling features as respects the question of patentable invention. There are ten claims, and all are in issue. The first eight are each limited to a metal flanged plate containing perforations and, except 7 and 8, "adapted for use in the attachment of other parts," while 9 and 10 are combination claims each embracing a perforated plate with a "plurality of other perforated mechanical elements." The differences in claims may, for the purpose of this opinion, be fairly illustrated by claims 1, 7, 8, and 10, which are copied in the margin.[2]

[2] "1. A flanged metallic plate for use in the construction of working models, toys or the like, comprising a plate or main body portion, and two flanges extending along said body portion at an angle thereto and each having therein a row of perforations disposed along the same in the direction of the body portion of the plate and adapted for use in the attachment of other parts."

"7. A sheet metal flanged plate for use in the construction of working models, toys or the like, comprising a plate or table having perforations therein, flanges on the longitudinal edges of said plate having perforations therein, all of the perforations being equally pitched.

"8. A sheet metal flanged plate for use in the construction of working models, toys or the like, comprising an elongated plate having its longer edges relatively inclined and provided with a central series of perforations, and transverse series of perforations along its shorter edges, and flanges

It is to be observed that some of the claims are broader than others; as, for instance, claims 1 and 10 do not call for any perforations at all in the body portions of their respective plates, though they do in the flanges, while claims 7 and 8 call for perforations in both the body portions and the flanges of their several plates. It is also to be remembered that the object of the perforations is to adapt the plates for use in attachment of other and well-known parts. We have then two simple channel plates whose perforations were predetermined by other and standard perforated elements, also a previously known, if not an old, plan of building up toy structures by the use of perforated elements, in connection with gear wheels, pulleys, spindles, etc., and also a declared ·purpose to use these perforated channel plates as a means to diminish the number of parts and "to produce greater rigidity in the structures."

We thus come to the question whether there is any disclosure amounting to patentable invention. There are a number of reasons why we think there is not. In the first place, the manual copyrighted by the Meccano Limited in 1910 shows perforated rectangular plates with integral, though solid, flanges, one of them having also an attached perforated flange (called in the manual an angle bar or girder); and these disclosures were regarded by the learned trial judge as anticipating the patent "so far as the language of the claims is applicable to the rectangular plate" (D. C.) 234 Fed. 924, 925. The manual was a prior "printed publication" within the meaning of section 4886, Rev. Stat. U. S. (Comp. St. 1916, § 9430); and its effect upon the patent in suit is in principle the same as if the manual had been put out by a stranger. James v. Campbell, 104 U. S. 356, 382, 26 L. Ed. 786; Schieble Toy Novelty Co. v. Clark, 217 Fed. 760, 766, 133 C. C. A. 490 (C. C. A. 6). Further, as pointed out in the opinion below, the rectangular plate in issue finds close analogy in the perforated rectangular blocks shown in the patent to Quackenbush, September 25, 1877, No. 195,689. That patent, it is true, was for an improvement in wooden toy-building blocks associated with wheels, spindles, and the like; but the idea of a change from wood to metal in adapting old elements to other structures in order as here to make them more rigid is well within the scope of mechanical skill (Wise Soda Fountain Co. v. Bishop-Babcock-Becker, 240 Fed. 733, 736, 153 C. C. A. 531 and citations [C. C. A. 6]); besides, the use of perforated metal parts in the construction of toys was, at the date of the patent in suit, well known to the patentee, Hornby, through his earlier United States patent, January 16, 1906, No. 810,148.

on the inclined edges of said plate having perforations therein, all of the aforesaid perforations being equally pitched."

"10. The combination, in a working model, toy or the like, of a flanged metallic plate comprising a plate or main body portion with flanges at an angle to said body portion along two opposite edges thereof, said flanges having therein a series of perforations extending in the direction of the body portion of the plate, one or a plurality of other perforated mechanical elements, the perforations in said element or elements and in the flanges being equally pitched, and means engaging perforations in said element or elements and said flanged plate for fastening the parts together."

In the next place, the sector plate in issue cannot be differentiated from the rectangular plate save only in its shape; and this difference is not enough to conceal the obvious identity in functions of the two plates. Since the declared object in effect was to substitute these plates for old and standard parts in order to make the toy structures more rigid, it is perfectly plain that the nature of the old structures themselves would suggest to the skilled mechanic the shape as well as the use of contrivances calculated to strengthen them. Further, the prior art in toy building is replete with shapes and forms adapted to the erection of many varieties of toys. Burton in his patent, No. 604,708, May 24, 1898, shows sector blocks for toy arch building; while Annin's patent, No. 305,879, September 30, 1884, discloses a sector-shaped bottom for the tray of his wheelbarrow. Annin's construction it is true was not a toy, but there is striking resemblance between the sector-shaped bottom of his invention and the bottom of a toy wheelbarrow which is represented by one of the drawings accompanying the present patent in suit. And it is worthy of remark, moreover, that on February 4, 1911, more than a year and a half prior to his application for the patent in suit, Hornby applied for design patents on both his sector plate and rectangular plate, and the respective plates there shown are the same as those represented in the present drawings. Both applications were denied on the grounds in substance that they were devoid of artistic merit, and that they also failed to present anything patentably novel over the state of the art as shown by the examiner's citations. These citations, however, do not appear in the present record. Although efforts were made to overcome the objections of the examiner, yet they failed, and nothing further appears to have been done.

It results that the present patentee has substituted one toy element that was old and another that was plainly its mechanical equivalent, if not itself old, for perforated parts of a previously existing system of toy building, and with the object above stated. Moreover, the employment of perforations and disposing them involved only the detail of providing openings in the plates that would register with existing perforations contained in "standard parts" of the structures so sought to be strengthened. We cannot think this was anything more than mechanical skill. It may be that firmer toy building was thus obtained; but this was not to accomplish a new result within any accepted meaning of invention. Lemley v. Dobson-Evans Co., 243 Fed. 391, 398, —— C. C. A. —— (C. C. A. 6). Indeed, whether the substituted parts with their adaptation to other and old parts, be considered by themselves or in combination with "one or a plurality of other perforated mechanical elements," for example as stated in claim 10, this was a mere carrying forward of the original idea, a change in form, an improvement in degree, without substantial change in either means or result, and so was not invention. Market Street Railway Co. v. Rowley, 155 U. S. 621, 629, 15 Sup. Ct. 224, 39 L. Ed. 284; Railroad Supply Co. v. Elyria Iron Co., 244 U. S. 285, 292, 37 Sup. Ct. 502, 61 L. Ed. 1136; Star Hame Mfg. Co. v. United States Hame Co., 227 Fed. 876, 883, 142 C. C. A. 400, and citations (C. C. A. 6). This is not to overlook the insistence

for appellee that it was invention to convert the rectangular plate with a perforated flange mechanically attached into a single structure. It is, however, settled that simply to unite two parts into an integral construction does not constitute invention (Howard v. Detroit Stove Works, 150 U. S. 164, 170, 14 Sup. Ct. 68, 37 L. Ed. 1039; Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162, 166, 51 C. C. A. 109 [C. C. A. 6]); and this principle is especially applicable here, since the two parts so converted into a unitary structure could have no different relation to each other, or to other perforated parts with which they might be combined in toy building, from that which they bore when they were simply mechanically attached (Gould & Eberhardt v. Cincinnati Shaper Co., 194 Fed. 680, 685, 686, 115 C. C. A. 74 [C. C. A. 6]; Sheffield Car Co. v. D'Arcy, 194 Fed. 686, 692, 116 C. C. A. 322 [C. C. A. 6]; D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 742, 88 C. C. A. 606 [C. C. A. 6]). It must follow that the patent is void because of the lack of invention.

[6, 7] A question of costs remains under the first appeal. A judgment was entered against appellants and in favor of appellee for $470.26, as costs fixed by the court under equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), to reimburse appellee for expenses incurred in obtaining the depositions of two witnesses. Appellee called on appellants to admit in writing the execution and genuineness of certain documents to be used in evidence in appellee's behalf. Appellants' counsel declined to make any admission within the time prescribed by the rule. Later, however, they notified appellee's counsel by telegram that they would "stipulate the Read incident when we meet in Marietta, Tuesday," where one of the depositions was to be taken. Answer by telegram was made to this, stating that all arrangements had been "made and considerable expense incurred," and declining to accept stipulation except on appellants' payment of full expenses to date. No response was made to this telegram. Counsel for both sides met later at Marietta, Ohio, and obtained the deposition of one of the witnesses; and it is to be inferred from the record that at the close of the deposition counsel for appellee stated, apparently in the presence of opposing counsel, that:

"As no reply has been received to the telegram just quoted [the last telegram above alluded to], the taking of depositions on behalf of complainant [appellee] is now adjourned to be resumed * * * at Bloomington, Ill. * * * *"

It is insisted for appellants that appellee was in possession or control of the documents; that they were provable in the ordinary course of procedure; that certain of the letters had theretofore been proved and introduced into the case, and consequently that rule 58 did not apply. We think the applicable portion of the rule is the last paragraph, and appellants' failure to respond to appellee's offer to accept payment of the expenses then incurred seemingly justified the course pursued by the latter. The decisions relied on by appellants appear to relate to other portions of the rule. Our attention has not been called to a decision construing the last paragraph, and yet similar pro-

246 F.—39

visions, and the course pursued under them are familiar to practitioners. It is a general principle, apart from rule 58, that the taxing of costs in equity cases is within the sound discretion of the court (Du Bois v. Kirk, 158 U. S. 58, 67, 15 Sup. Ct. 729, 39 L. Ed. 895); and upon the facts here disclosed we find no abuse of discretion on the part of the trial court in this matter.

As to the evidence offered upon the second appeal, the court seems to have considered it with reference to the facts involved under the first appeal and the opinion rendered thereon; and, as before pointed out, the court concluded that the newly discovered facts were not sufficient to warrant a change in its previously expressed views of the case. It is argued that this evidence renders untenable the conclusion upon the issue of unfair competition. It might be conceded that portions of the new evidence would require modification of some of the views expressed in the court's opinion on that issue, as, for instance, the origin of parts of the business system said to have been first introduced by Hornby; but this would not affect the soundness of the conclusion reached upon such issue. Appellants do not seem to appreciate the true effect of other features of the evidence upon which the court evidently rested this conclusion (D. C.) 234 Fed. at pages 917 to 919. And although the two Von Leistner United States patents, the first, No. 525,221, August 28, 1894, and the second, No. 543,580, July 30, 1895, constitute part of the new evidence, yet they could affect in material degree only the patent in suit, and so are not important in view of our ruling upon the patent. Hence we cannot say that the evidence considered as a whole does not fairly sustain the conclusion reached below upon the issue of unfair competition.

The decree in No. 2977 must be reversed so far as it adjudges the patent in suit to be valid or is otherwise dependent on that ruling; the decree in No. 3014 will be affirmed; and both causes be remanded, with direction to enter in the suit from which these appeals were taken a single decree not inconsistent with this opinion.

## On Rehearing Petition for Certain Instructions.

Appellants' "rehearing petition" for "instructions regarding the extent of the reversal of the lower court" is denied; no instructions are necessary, since the opinion approves the conclusions reached below upon the issues joined, except the one in relation to the patent in suit, and the patent in suit describes the two perforated plates as its only features of patentable novelty. Hence no perceivable difficulty can arise from the adjudged invalidity of the patent; in principle the situation here does not differ from the one involved in Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. 603, 605, 608, et seq., 128 C. C. A. 203, L. R. A. 1915F, 1107 (C. C. A. 6), where the trade-mark claimed was held invalid while the charge of unfair competition was sustained. See, also, Saalfield Pub. Co. v. G. & C. Merriam Co., 238 Fed. 1, 10, 151 C. C. A. 77 (C. C. A. 6).